E. GRADY JOLLY, Circuit Judge:
In this appeal, we address for the first time whether 18 U.S.C. § 16’s statutory definition of “crime of violence” is unconstitutionally vague. We consider this question in the light of the Supreme Court’s recent holding that a similar provision of the Armed Career Criminal Act (ACCA) is unconstitutionally vague. Johnson v. United States, — U.S.—, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). In Johnson, the Court held that the ACCA violated the constitutional prohibition against vague criminal statutes by defining “violent felony” as any crime that “is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another18 U.S.C. § 924(e)(2)(B). Section 16 contains a similar definition: a “crime of violence” is “any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” The Seventh and Ninth Circuits have both held that this *227 language is sufficiently similar to the ACCA’s language to suffer the same unconstitutional fate. United States v. Vivas-Ceja, 808 F.3d 719, 720 (7th Cir.2015); Dimaya v. Lynch, 803 F.3d 1110 (9th Cir.2015). We agree, and accordingly hold § 16 unconstitutional.
I.
Gonzalez-Longoria pled guilty to and was sentenced for being illegally present in the United States in violation of 8 U.S.C. § 1326. During sentencing, the court determined that Gonzalez-Longoria had previously committed an “aggravated felony” under USSG § 2L1.2(b)(l)(C) and applied an eight-level sentencing enhancement. “ ‘[Aggravated felon/ has the meaning given that term in 8 U.S.C. [§ ] 1101(a)(43).” Section 1101(a)(43), in turn, defines an “aggravated felony” as any of a list of offenses, including “a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment is at least one year.” Section 16 defines “crime of violence” as
(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
The government does not contend that Gonzalez-Longoria’s 2008 conviction qualified under § 16(a). Thus, Gonzalez-Longoria’s past offense qualifies as an “aggravated felony” only if it qualifies as a § 16(b) “crime of violence,” as the district court found.[1]
Gonzalez-Longoria argued that the § 16 definition of “crime of violence” is unconstitutionally vague. The district court disagreed and sentenced Gonzalez-Longoria to twenty-seven months of imprisonment and three years of supervised release. Gonzalez-Longoria appealed, challenging the facial constitutionality of § 16.
II.
As an initial matter, we consider whether Gonzalez-Longoria can validly challenge the constitutionality of § 16. GonzalezLongoria received a sentencing enhancement under USSG § 2L1.2(b)(1)(C). If Gonzalez-Longoria had challenged § 2L1.2 as unconstitutionally vague, we would have to determine whether guideline provisions are immune from vagueness challenges, as the Eleventh Circuit recently held.[2] We have not previously decided this issue in a published case, though unpublished cases have agreed with the approach adopted by the Eleventh Circuit. See, e.g., United States v. Velasquez, 2007 WL 2437961 (5th Cir.2007) (“[The defendant’s unconstitutional vagueness argument is unfounded because it challenges a [sentencing [g]uideline, not a criminal statute.”).[3]
*228 Gonzalez-Longoria, however, does not challenge the' constitutionality of § 2L1.2(b) but instead challenges § 16. Thus, we need not address the question of whether guideline provisions are subject to vagueness challenges, as both Gonzalez-Longoria and the government contend them to be. Instead, we limit our analysis to the situation before us: If § 16 is unconstitutional, it becomes a legal nullity, and can have no further effect. Accordingly, § 2L1.2(b) would not be able to incorporate that nullity by reference and Gonzalez-Longoria’s sentence should not have been enhanced.
The government urges that focusing on § 16’s incorporation by reference risks creating “an untenable distinction because it would treat differently a [gjuideline that reprints statutory language from a [gjuideline that, rather than copy the text, simply refers to a statute by number.” Gov’t letter br. at 2. This is true. One consequence of our holding is § 2L1.2 (which incorporates § 16 by reference) could be treated differently from § 4B1.2 (which mirrors the language held invalid in Johnson). To avoid this difficulty, the government argues that we should subject .all guideline provisions to vagueness challenges. Perhaps this argument is correct. On the other hand, some reasons exist to treat incorporation by reference differently from copying the text: when the sen-fencing commission incorporates a statutory provision by reference, it ties the guideline to any future legislative or judicial changes to that statute, ensuring uniformity. Conversely, when the sentencing commission copies the text of a statute without incorporating the statute by reference, it fixes the meaning of the guideline to that text — future amendments of the statute would be irrelevant to the guideline. Arguably, this decision to incorporate by reference or to copy text should determine the availability of a vagueness challenge. In any event, however, we leave these questions for another day and hold only that, when a guideline incorporates a statute by reference, a defendant sentenced under that guideline may permissibly challenge the statute’s constitutionality.[4] We turn, therefore, to the question of whether § 16 is unconstitutionally vague.
III.
Johnson sets the background for this inquiry:
The Fifth Amendment provides that “[njo person shall ... be deprived of life, liberty, or property, without due process of law.” ... [Tjhe [gjovernment violates this guarantee by taking away someone’s life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice *229 of the conduct it punishes, or so stan-dardless that it invites arbitrary enforcement. Kolender v. Lawson, 461 U.S. 352, 357-358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)____ These principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences. United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).
Johnson, 135 S.Ct. at 2556. A facial vagueness challenge “presents a pure question of law” and we therefore review it de novo. United States v. Clark, 582 F.3d 607, 612 (5th Cir.2009).
A.
The government argues that we should not reach the merits of GonzalezLongoria’s facial vagueness challenge because § 16 is not vague as applied to him in the circumstances of his sentence. The government correctly points out that a defendant cannot raise a vagueness challenge to a statute simply because some hypothetical other defendant’s conduct might create a “vague application” of the statute. Gov’t Supp. Br. 9. This restriction, however, does not mean that every defendant must first show that a statute is vague as applied to him as a predicate to any further argument of facial vagueness. Instead, the government’s argument is best taken as illustrating the high bar for facial vagueness challenges. As the government acknowledges, a statute can be “void for vagueness because of its inherent inability to produce ‘evenhanded, predictable, or consistent’ applications.” Gov’t Supp. Br. at 9 (quoting Johnson, 135 S.Ct. at 2563). Gonzalez-Longoria argues that exactly this sort of “inherent inability” infects § 16. To determine whether he is correct, we turn to the Supreme Court’s recent decision in Johnson v. United States.
B.
In 2007, Samuel Johnson was convicted of unlawfully possessing a short-barreled shotgun; in Johnson’s subsequent prosecution for being a felon in possession of a firearm, the government argued that the 2007 crime met the ACCA’s definition of “violent felony.” The ACCA defined “violent felony” as any crime that “is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another ”; the Court struck down this final clause, the residual clause, as unconstitutionally vague.
The Court held that the residual clause is vague because it contained “[t]wo features.” It required (1) that courts imagine an “ordinary case” and (2) that courts then adjudicate that “ordinary case” under an “imprecise standard.” Neither of these “features” is self-explanatory; we address each in turn.
First, however, a note concerning terms: the Court uses the term “ordinary case.” As explained below, by “ordinary case” the Court refers to a hypothetical case based upon hypothetical facts, standard to the crime, instead of the defendant’s actual criminal conduct. In other words, we understand the Court’s use of “ordinary case” to refer to the archetypical conduct associated with the crime. Consequently, we will sometimes use the term “archetypical case” interchangeably with “ordinary case.”

1. Archetypical-case analysis

Before we can turn to the question of what archetypical-case analysis is, we must start with a more basic question: What is usually the judge’s role in applying a typical criminal statute to the defendant who committed the crime? That is, what does a judge do when a statute does not require archetypical-case analysis? The judge ap *230 plies the law to the facts in the case before him. For example, if a law criminalizes “manufacturing a controlled substance” in a way that creates “substantial risk of harm to human life,”[5] the judge determines whether the facts in this ease showed that the defendant before him created a “substantial risk of harm to human life.” This might be a hard question on factual grounds (which testimony is most credible?) or on legal grounds (what, exactly, is “substantial risk?”). But this question is exactly the sort of question that judges and juries ask and answer routinely-
And this question is exactly the sort of question that judges are forbidden from asking when they are called upon to apply an archetypical-case analysis. When charged with undertaking archetypical-case analysis, a judge must ignore the facts of the case before him; likewise, he must disregard the defendant’s specific conduct.
This task raises an initial question: Why would a statute ever instruct a court to ignore the facts of the crime before it? In Johnson, the ACCA was written to avoid requiring a factual inquiry so that courts can sentence career offenders without delving into the specific conduct of their past offenses. Specifically, the district judge in Johnson did not need to inquire into the details of Johnson’s 2007 state-court conviction for possessing a short-barreled shotgun. Instead, the sentencing judge applied the archetypical-case analysis.
So, finally, what exactly is archetypical-case analysis? This analysis asks the judge to examine the crime that the defendant was charged with (here, possessing a short-barreled shotgun). The judge is then to ignore facts of the defendant’s conduct and imagine the hypothetical facts archetypieally associated with that crime. In the Court’s words, a judge must create “a judicially imagined ‘ordinary case’ of a crime” that is not tied “to real-world facts or statutory elements.” Id. at 2557. The judge must then adjudicate that archetypical case by the standard provided in the same statute. In Johnson, the trial judge was required to ask whether the archetypical case of possessing a short-barreled shotgun “involves conduct that presents a serious potential risk of physical injury to another.” This hypothetical application of this standard to the hypothetical facts of the imagined case forms the heart of the archetypical-case (or ordinary case) analysis.

2. Imprecise standard

Analyzing an archetypical case does not by itself render a statute unconstitutionally vague under Johnson. Only when the required archetypical-case analysis is paired with the second “feature” does the statute become impermissibly vague. That second feature is whether the statute judges the archetypical case against an “imprecise standard.”
Under the ACCA, courts were asked to determine if the archetypical case of a crime met the following standard: does the archetypical crime “involve[] conduct that presents a serious potential risk of physical injury to another”? The Court noted that a “serious potential risk” standard is textually imprecise. After examining the textual imprecision, the Court identified three factors that could add or subtract precision from the text. First, the residual clause was not clarified by example, as the government argued; instead, a “confusing list of examples” made an already-imprecise standard worse. Id. at *231 2561. Second, the residual clause did not apply to a narrow scope of conduct; instead, it applied broadly to subsequent effects of a criminal act.[6] Id. at 2551. Third and finally, federal courts had not agreed about how to interpret the residual clause; instead, they had experienced “pervasive disagreement” about the clause’s proper meaning. Id. at 2560. Each of these factors reduced the precision of the ACCA’s standard.
Based on the ACCA’s text and these three factors, the Court held that the residual clause contained an impermissibly imprecise standard. The Court did not determine whether the textual imprecision alone or any combination of the factors, without the others, would have doomed the ACCA. “Each of the uncertainties in the residual clause may be tolerable in isolation, but ‘their sum makes a task for us which at best could be only guess work.’ ” Id. (quoting United States v. Evans, 333 U.S. 483, 495, 68 S.Ct. 634, 92 L.Ed. 823 (1948)). Given that sum, the ACCA contained an imprecise standard; applying that imprecise standard with archetypical — case analysis rendered the ACCA unconstitutionally vague.

3. The Johnson test for vagueness

Thus, the Johnson test for vagueness requires that we ask two questions today, in our consideration of § 16. First, whether the statute requires the analysis of an imaginary, archetypical case to determine whether a crime is a “crime of violence.” That is, whether applying the statute requires a court to set aside the actual facts before it, and to imagine the conduct that would be committed in an archetypical case of the crime under consideration. If not — if the court is free to look at the facts of the case before it — then Johnson does not apply.
If the statute does require that we perform an analysis of the archetypical case, we then turn to a second question: whether the archetypical case must be adjudicated under an “imprecise standard.” To answer this question, we will look to the text of the statute and three non-exclusive factors: presence or absence of clarifying examples, whether the scope is limited or expansive, and judicial agreement or disagreement.
If the statute both calls for an analysis of the archetypical case and provides an “imprecise standard” by which the archetypical case must be judged, it follows that the statute is unconstitutionally vague.
IV.
We first raise the threshold question: whether interpreting § 16 requires an analysis of an archetypical case. The parties do not dispute that such an analysis is required,[7] and we agree. The only disputed question is whether § 16 includes an imprecise standard by which the archetypical case must be judged. Thus, accepting the first prong of Johnson as satisfied, we turn our full attention to the second consideration in the vagueness analysis.
A.
We begin with the text. Section 16 defines a “crime of violence” as “any other *232 offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” 18 U.S.C. § 16. This text closely resembles the ACCA’s definition of “violent felony” as any crime that “is [one of the examples] or otherwise involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B). The ACCA’s standard, however, is arguably less precise, since the ACCA’s risk is modified by both “serious” and “potential,” while § 16’s risk is modified only by “substantial.” Further, “physical force” may be marginally clearer than “physical injury.” These differences are slight, however, and the two statutes’ text provide similarly imprecise guidance. We therefore turn to the factors identified in Johnson.
B.
The first factor that affects the precision of a standard is the presence or absence of clarifying examples. In Johnson, the government argued that the presence of examples clarified the meaning of the ACCA. Johnson, 135 S.Ct. at 2560-62. The Court rejected this argument, holding that the list of examples was “confusing.” The Court focused specifically on “burglary” and “extortion”:
These offenses are far from clear in respect to the degree of risk each poses. Does the ordinary burglar invade an occupied home by night or an unoccupied home by day? Does the typical extortionist threaten his victim in person with the use of force, or does he threaten them by mail with the revelation of embarrassing personal information?
Johnson, 135 S.Ct. at 2558.
Today, the government argues that § 16 is clearer than the ACCA because “it does not contain an introductory list of enumerated crimes followed by an ‘otherwise’ provision.” Gov’t Supp. Br. at 3. True enough. Section 16, however, also lacks clarifying examples. Arguably, having no examples is worse than having unclear examples. The confusing examples in Johnson “provide at least some guidance as to the sort of offenses Congress intended for the provision to cover. Section 16(b), by contrast, provide no such guidance at all.” Dimaya, 803 F.3d at 1118 n. 13. See also Vivas-Ceja, 808 F.3d at 723 (holding that, without examples, the ACCA’s standard would have been objectionably imprecise, and that “the enumeration of specific crimes did nothing to clarify” the ACCA’s imprecise standard).
We could look beyond the text of § 16 for potentially clarifying examples in an attempt to save the statute. This search, however, leads to examples that, like the ACCA’s examples, confuse rather than clarify. As the government notes, “In Leocal [v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) ], a unanimous Court ... identified one offense (burglary) as the ‘classic example’ of a § 16 qualifying offense.” Gov’t Supp. Br. at 6. Thus, § 16 arguably contains a judicially imposed example — the very one that proved most problematic in the ACCA. Just as the ACCA’s “residual clause offers no reliable way to choose between ... competing accounts of what ‘ordinary’ attempted burglary involves,” § 16 offers no principled way to determine how much physical force, if any, is risked in an ordinary burglary. Johnson, 135 S.Ct. at 2558. “Does the ordinary burglar invade an occupied home by night or an unoccupied home by day?” Id. The answer is no clearer when interpreting § 16 than when interpreting the ACCA.
“Burglary” is not the only arguable § 16 example. Section 16 only impacts Gonzalez-Longoria because it is incorporated *233 into the definition of “aggravated felony” as “a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense).” 8 U.S.C. § 1101(a)(43)(F) (emphasis added). This qualifier suggests that at least some “purely political offense[s]” would otherwise be § 16 crimes of violence. Like burglary, however, the “purely political offense” example is confusing. Though we have never interpreted the meaning of “purely political offense,” the Second Circuit contrasted “ ‘purely’ political offenses against a government, such as treason, sedition[,] and espionage, [with] ‘relative’ political offenses, to wit, crimes against persons or property which are incidental to a war, revolution, rebellion or political uprising.” Matter of Mackin, 668 F.2d 122, 124 (2d Cir.1981). If we were to adopt this view, it would be hard to conceive of a “purely” political offense that would otherwise qualify as a § 16 crime of violence. This factor adds further imprecision.
Section § 16 lacks a clarifying list of examples. It either contains no examples and thus lacks any source of clarification, or it contains a confusing list of examples. Neither alternative reduces the statute’s imprecision.
C.
The second factor contributing to the ACCA’s imprecision was the potential breadth of its scope. The Court noted that, to interpret the residual clause, courts must go beyond “evaluating the chances that the physical acts that make up the crime will injure someone” to consider injuries that might occur after those physical acts had been completed. Johnson, 135 S.Ct. at 2557 (emphasis added).
The government contends that, because § 16 “applies only when the risk of force occurs ‘in the course of committing the offense,’ ” it is “significantly narrower” than the ACCA’s residual clause. Gov’t Supp. Br. at 5. This assertion, however, fails to contend with Leocal’s observation: Burglary is a “classic example” of a § 16 crime of violence. Leocal, 543 U.S. at 2, 125 S.Ct. 377.[8] In the ACCA:
the inclusion of burglary [as an example] confirms that the court’s task also goes beyond evaluating the chances that the physical acts that make up the crime will injure someone. The act of ... breaking and entering into someone’s home does not, in and of itself, normally cause physical injury. Rather, risk of injury arises because ... the burglar might confront a resident in the home after breaking and entering.
Johnson, 135 S.Ct. at 2557. Just as the risk of injury in burglary frequently occurs after the breaking and entering, so too does the risk of physical force. Thus, at least some extra-offense conduct must be part of our analysis, and we cannot accept the government’s interpretation that § 16 “does not go beyond ‘the physical acts that make up the crime.’ ” Id.[9]
*234 The government further argues that Leocal limits § 16. Leocal states that “ § 16 relates not to the [defendant’s] general conduct or to the possibility that harm will result from a [defendant’s conduct, but to the risk that the use of physical force against another might be required, in committing a crime. The classic example is burglary.” Leocal, 543 U.S. at 10, 125 S.Ct. 377 (emphasis added). What it means for the use of force to be “required” is not clear. It must mean something more than being part of “the physical acts that make up the crime” (or burglary would not count) but less than “the possibility that harm will result.” In many ways, the Court’s statement about the residual clause applies equally to § 16: “The inclusion of burglary ... suggests that a crime may qualify under [§ 16] even if the physical [force] is remote from the criminal act.” Johnson, 135 S.Ct. at 2559. The Court goes on to ask, “[b]ut how remote is too remote?” Id. For § 16, we have a partial, unsatisfying answer — only so remote as to be “required” by the crime and definitely not so remote as the mere “possibility that harm will result.” This provides little guidance.
D.
Lastly, we examine the degree of judicial agreement or disagreement about § 16. We begin by noting that this factor is the least important: Unlike the other factors, judicial disagreement does not cause imprecision. If a' new law were passed, it would be exactly as imprecisé before any courts had disagreed about it as it would be afterwards. Nonetheless, judicial disagreement provides evidence of imprecision, even if it does not create it.
At least at the Supreme Court level, § 16 has occasioned much less disagreement than did the ACCA— § 16 has been to the Court only once, in Leocal, a unanimous decision. The Supreme Court, however, has discretion over its docket and thus the absence of § 16 cases may speak minimally to the inherent imprecision of the statute. The evidence of disagreement from district and circuit courts is more mixed. Gonzalez-Longoria points out multiple cases that disagree about how to interpret § 16. See Gonzalez-Longoria Br. at 22-24. The government responds that much of this confusion was cleared up by Leocal and more by Johnson; of the remaining disagreements, many seem like the sort of “marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls” that do not provide much evidence of imprecision. Gov’t Supp. Br. at 7 (quoting Johnson, 135 S.Ct. at 2560). Judicial disagreement provides some evidence of imprecision but less evidence than was present in Johnson.
V.
Having now examined the Johnson factors, we return to the central question: Whether the standard in § 16 is so imprecise that, in combination with the ordinary-casé inquiry, § 16 becomes unconstitutionally vague. Section 16’s standard is imprecise in all the ways that the ACCA’s standard was imprecise; in each case, however, it is arguably at least slightly less imprecise. The ACCA’s standard referenced a confusing list of examples; § 16’s text references no examples at all. The ACCA’s standard encompasses a broad scope, as it considers post-offense conduct; so does § 16’s standard, though its scope may be at least slightly limitéd by Leocal. The ACCA had occasioned judicial disagreement; so has § 16, though less. Comparing § 16’s standard to the ACCA’s standard, all we can say with confidence is *235 that § 16’s standard is imprecise, although not quite as imprecise as the ACCA’s standard.
Our course forward is clear, however, upon considering that Johnson was not a case at the very margins of vagueness and non-vagueness. Johnson did not hold that the ACCA’s standard represents a minimum bar for precision; that is, Johnson did not hold that any standard slightly more precise than the ACCA’s is acceptably precise. To the contrary, Johnson held that the ACCA’s standard was so imprecise that the Court was justified in departing from stare decisis. Presumably, therefore, a marginally more precise standard could be problematically vague. Section 16’s standard is that marginally more precise — yet still imprecise — standard.
Thus, considering each of the arguments and nuances brought to our attention, we hold that § 16 is unconstitutionally vague because, at bottom, § 16 requires courts both to imagine an ordinary/archetypical case and then to judge that imagined case against imprecise standard. Under Johnson, this means that § 16 is unconstitutionally vague, and we so hold.
We therefore VACATE Gonzalez-Lon-goria’s sentence and REMAND to the district court for resentencing in a manner not inconsistent with this opinion.
VACATED and REMANDED.

. USSG § 2L1.2 separately defines "crime of violence.” Gonzalez-Longoria’s offense un-disputedly did not satisfy the § 2L1.2 definition of “crime of violence”; the doubt is about the §16 definition of "crime of violence,” which is relevant to the § 2L1.2 definition of "aggravated felony.”

. United States v. Matchett, 802 F.3d 1185, 1195 (11th Cir.2015) ("Because there is no constitutional right to sentencing guidelines— or, more generally, to a less discretionary application of sentences than that permitted prior to the Guidelines — the limitations the Guidelines place on a judge’s discretion cannot violate a defendant’s right to due process by reason of being vague.”) (quoting United States v. Wivell, 893 F.2d 156, 160 (8th Cir.1990)).

. Velasquez cites United States v. Pearson, 910 F.2d 221 (5th Cir.1990). Pearson, however, does not address whether the guidelines are subject .to a vagueness challenge. It holds only that "[d]ue process does not mandate[] either notice, advice, or a probable prediction of where, within the statutory range, the guideline sentence will fall.” Id. at 223. As Gonzalez-Longoria points out, notice is only one concern underlying the vagueness analysis; the vagueness doctrine also seeks to prevent arbitrary enforcement. See Johnson, 135 S.Ct. at 2558.

. We therefore do not reach Gonzalez-Longo-ria’s alternative argument that he may challenge § 16 because it raised the statutory maximum for his sentence from ten years to twenty years (Gonzalez-Longoria was sentenced to twenty-seven months of imprisonment). See Vivas-Ceja, 808 F.3d at 720 (reaching, the constitutionality of § 16 because it increased the statutory maximum when the defendant was sentenced below any relevant statutory maximum).

. See 21 U.S.C. § 858.

. "[A] crime may qualify under the residual clause even if the physical injury is remote from the criminal act. But how remote is too remote? Once again, the residual clause yields no answers.” Id. at 2551.

. Compare Gov’t Supp. Br. at 3 ("[Ljike [interpreting the] ACCA, [interpreting] § 16(b) involves a risk-based analysis of the 'ordinary case’ of a predicate offense.”) with Gonzalez-Longoria Supp. Br. at 4 ("[Interpreting § 16(b)] requires a categorical inquiry that asks the sentencing court first to imagine the type of conduct constituting the 'ordinary case’ of the crime....”).

. Leocal's strict holding was only that driving under the influence is not a crime of violence, and thus the discussion of burglary is arguably dicta. Nonetheless, the Court was emphatic — not only is burglary included under § 16, it is "the classic example” of a crime of violence under § 16; we would need strong reason to depart from such clear guidance from the Court.

. One way to save the government’s reading of the statute would be to interpret "in the course of committing the offense” strictly but to read "physical force against the person or property of another” so broadly that it includes picking a lock or opening a door. However, this would not decrease the imprecision of the statute but merely shift it — courts would then confront the question of what *234 meaning "physical force” could possibly have.