**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DORNA ALICIA MILLER,
*Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney General,
*Respondent.*

No. 15-72645

Agency No.
A097-344-335

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 15, 2018
San Francisco, California

Filed May 8, 2018

Before: Paul J. Watford and Michelle T. Friedland, Circuit Judges, and Jed S. Rakoff,[*] Senior District Judge.

Opinion by Judge Watford

---

[*] The Honorable Jed S. Rakoff, Senior United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted Dorna Alicia Miller's petition for review of a decision of the Board of Immigration Appeals and remanded, holding that 8 U.S.C. § 1231(a)(5), which governs reinstatement of removal orders, does not deprive an immigration court of jurisdiction to resolve a motion to reopen a removal order issued *in absentia*, where the motion is based on a claim of lack of notice of the individual's removal hearing.

The case required the panel to interpret the interplay between two provisions of the Immigration and Nationality Act. One provision, 8 U.S.C. § 1229a(b)(5), authorizes immigration judges to order non-citizens removed from the country *in absentia* under certain circumstances, but also provides a fail-safe mechanism: If the individual can show that she never received notice of the hearing, she may seek to rescind a removal order entered *in absentia* by filing a motion to reopen "at any time." § 1229a(b)(5)(C)(ii).

The other provision at issue, 8 U.S.C. § 1231(a)(5), applies to non-citizens who are ordered removed, leave the United States while under the order of removal, and reenter the country illegally. In that scenario, the Department of Homeland Security may reinstate the prior removal order through a summary proceeding that does not involve a hearing before an immigration judge. The provision also

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

states that when an order is reinstated, the prior removal order "is not subject to being reopened or reviewed."

After Miller was ordered removed *in absentia* in 2004, she was apprehended attempting to reenter the United States, and the DHS reinstated her 2004 removal order. After expressing a fear of returning to El Salvador during her reinstatement proceedings, her case was referred to an immigration judge, who granted withholding of removal. Miller then filed a motion to reopen seeking to rescind her 2004 order so that she could seek asylum, which confers a broader set of rights than withholding of removal and is not available during reinstatement proceedings. Citing § 1231(a)(5), the immigration judge denied Miller's motion on the ground that he lacked jurisdiction to consider it, and the BIA affirmed.

As a threshold matter, the panel held that it had jurisdiction to consider whether Miller could seek rescission based on lack of notice, rejecting the government's contention that Miller failed to exhaust the issue by not citing the correct subsection of § 1229a(b)(5)(C). The panel concluded that Miller had sufficiently exhausted the issue by repeatedly raising "lack of notice" in her brief to the BIA, and by referring to the statutory authority to seek reopening "at any time."

The panel held that § 1231(a)(5) does not bar immigration judges from entertaining a motion to reopen an *in absentia* removal order under § 1229a(b)(5)(C)(ii). The panel acknowledged that the government's contrary interpretation of § 1231(a)(5) is not foreclosed by the text of the statute. However, the panel concluded that such a reading of the statute would raise potential due process concerns, at least in

circumstances, like those present in this case, in which the non-citizen first learns of the prior removal order at the outset of the reinstatement proceeding. Specifically, the panel noted that the court has held that due process challenges to the underlying removal order, even those predicated on lack of notice, generally may not be raised in the reinstatement proceeding itself. Thus, the panel concluded that, if the court adopted the government's reading of § 1231(a)(5), a non-citizen whose due process rights were violated in the earlier removal proceedings due to lack of notice could have the resulting removal order reinstated against her without ever being afforded an opportunity to challenge its legality.

In sum, the panel held that, while an individual placed in reinstatement proceedings under § 1231(a)(5) cannot as a general rule challenge the validity of the prior removal order in the reinstatement proceeding itself, she retains the right, conferred by § 1229a(b)(5)(C)(ii), to seek rescission of a removal order entered *in absentia*, based on lack of notice, by filing a motion to reopen "at any time."

---

## COUNSEL

Kari E. Hong (argued), Boston College Law School, Newton, Massachusetts, for Petitioner.

Aimee J. Carmichael (argued), Trial Attorney; Mary Jane Candaux, Assistant Director; Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Respondent.

---

**OPINION**

WATFORD, Circuit Judge:

This case requires us to interpret the interplay between two provisions of the Immigration and Nationality Act. One provision, 8 U.S.C. § 1229a(b)(5), authorizes immigration judges to order non-citizens removed from the country *in absentia*—that is, in the person's absence. Such orders may be entered when a non-citizen is directed to appear at a removal hearing but fails to show up, provided the government proves that it gave written notice of the hearing as required by statute and that the non-citizen is in fact removable. § 1229a(b)(5)(A). That rule would lead to obvious unfairness (and potential due process problems) if it were applied to someone who never actually received the required notice. So the statute provides a fail-safe mechanism: If the individual can show that she never received notice of the hearing, she may seek to rescind a removal order entered *in absentia* by filing a motion to reopen "at any time." § 1229a(b)(5)(C)(ii).[1]

---

[1] Section 1229a(b)(5)(C) provides in relevant part:

> [A removal order entered *in absentia*] may be rescinded only—
>
> (i) upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1)), or
>
> (ii) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section

The other provision at issue here is 8 U.S.C. § 1231(a)(5). That provision applies to non-citizens who (1) are ordered removed, (2) leave the United States while under the order of removal, and (3) reenter the country illegally. In that scenario, the Department of Homeland Security (DHS) may reinstate the prior removal order through a summary proceeding that does not involve a hearing before an immigration judge. *See* 8 C.F.R. § 241.8(a). When DHS reinstates a removal order pursuant to § 1231(a)(5), the prior removal order "is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5).[2]

The question presented in this case is what happens when these two statutory provisions collide? If DHS reinstates a removal order that was entered *in absentia*, can the non-citizen still file a motion to reopen under § 1229a(b)(5)(C)(ii) "at any time" on the ground that she never received notice of the prior hearing? Or does § 1231(a)(5) preclude such a motion by directing that the prior removal order "is not subject to being reopened or reviewed"?

---

1229(a) of this title or the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien.

[2] Section 1231(a)(5) provides:

If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

This issue arises in a case involving Dorna Miller, a native and citizen of El Salvador who fled her home country after suffering horrific abuse there on account of her race. She entered the United States unlawfully in March 2004 and was promptly apprehended by immigration officials. They gave her a written notice ordering her to appear at a hearing before an immigration judge "on a date to be set at a time to be set." When Miller was released from detention, she gave an immigration official the address at which she would be residing, to which all future notices should be sent. Officials subsequently mailed several notices to that address, informing Miller that her removal hearing had been set for May 7, 2004. She says she never received the notices, and the record contains evidence to support her account as the notices were returned with the notation "not deliverable as addressed." (It appears that the government sent at least some of the notices to the incorrect zip code.) When Miller failed to appear for her hearing on May 7, the immigration judge ordered her removed to El Salvador *in absentia*. Miller says she never received a copy of the judge's decision and thus did not know that she had been ordered removed.

Years passed without any further contact from immigration officials. In 2011, Miller voluntarily moved to Canada with her family to seek refugee status there, but the Canadian government denied her request. In September 2013, Miller unlawfully attempted to reenter the United States. She was apprehended at the border, and immigration officials quickly discovered that she had been ordered removed in May 2004. Miller says this encounter is the first time she learned of her removal order. DHS immediately reinstated her May 2004 removal order under § 1231(a)(5). The government also charged Miller with the criminal offense

of illegal reentry in violation of 8 U.S.C. § 1326(a), to which she later pleaded guilty.

During the reinstatement proceeding, Miller did not challenge the validity of her May 2004 removal order, but she did express a fear of returning to El Salvador given the past abuse she had experienced there. An asylum officer interviewed Miller, found that she had a reasonable fear of persecution in El Salvador, and referred her case to an immigration judge for a hearing to determine whether she should receive withholding of removal. *See* 8 C.F.R. § 208.31(e). In April 2014, the immigration judge granted Miller that relief.[3]

In July 2014, after her reinstatement and criminal proceedings had concluded, Miller filed a motion to reopen seeking to rescind her May 2004 removal order. She sought rescission of the order so that she could apply for asylum, which confers a broader set of rights than withholding of removal does. The immigration judge denied her motion on the ground that he lacked jurisdiction to consider it, citing § 1231(a)(5)'s command that when a prior removal order is reinstated, the order "is not subject to being reopened or reviewed." The Board of Immigration Appeals (BIA) affirmed the immigration judge's ruling, and Miller then filed a petition for review in our court.

As a threshold matter, the government argues that we lack jurisdiction to consider whether Miller can seek relief under

---

[3] Non-citizens placed in reinstatement proceedings may seek withholding of removal, but they are not eligible for asylum, which is the relief Miller seeks here. *See* 8 C.F.R. § 241.8(e); *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1070 (9th Cir. 2016).

§ 1229a(b)(5)(C)(ii) because she failed to raise that issue before the BIA. *See* 8 U.S.C. § 1252(d)(1); *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004). The government contends that when Miller was before the immigration judge, she sought relief only under § 1229a(b)(5)(C)(i), which authorizes the filing of a motion to reopen based on "exceptional circumstances" rather than on lack of notice. *See* n.1 above. But in her brief to the BIA, Miller repeatedly raised "lack of notice" as one of the grounds for her motion to reopen, and she argued that the Immigration and Nationality Act "authorizes a non-citizen ordered removed in absentia to seek reopening 'at any time' if the failure to attend proceedings was due to lack of notice." The reference to statutory authorization to seek reopening "at any time" due to lack of notice is a specific reference to the relief authorized under § 1229a(b)(5)(C)(ii). We therefore conclude that Miller "put the BIA on notice" of the jurisdictional basis for her motion, such that the BIA "had an opportunity to pass on this issue." *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004) (per curiam). This was sufficient to exhaust the issue. *Id.*

Because the issue before us turns on a question of law—whether § 1231(a)(5) bars immigration judges from entertaining a motion to reopen under § 1229a(b)(5)(C)(ii)— we review the BIA's ruling *de novo*. *See Lezama-Garcia v. Holder*, 666 F.3d 518, 524 (9th Cir. 2011). The BIA's decision is unpublished and was issued by a single member, so it is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), although it is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), "proportional to its thoroughness, reasoning, consistency, and ability to persuade." *Lezama-Garcia*, 666 F.3d at 524–25 (internal

quotation marks omitted). The BIA's decision contains no reasoning of any substance on the issue we consider here, so there is nothing for us to defer to.

We conclude that the BIA wrongly held that the immigration judge lacked jurisdiction to consider Miller's motion to reopen. We acknowledge at the outset that the government's interpretation of § 1231(a)(5) is not foreclosed by the text of the statute. It's possible that Congress intended to bar collateral attacks on a prior removal order whenever DHS decides to invoke the reinstatement procedure, even if the prior order was entered *in absentia* and the non-citizen received no notice of the earlier hearing. But that reading of the statute would raise potential due process concerns, at least in circumstances, like those present in this case, in which the non-citizen first learns of the prior removal order at the outset of the reinstatement proceeding. For we have held that due process challenges to the underlying removal order, even those predicated on lack of notice, may not be raised in the reinstatement proceeding itself. *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 496 (9th Cir. 2007) (en banc). Thus, if we adopted the government's reading of § 1231(a)(5), a non-citizen whose due process rights were violated in the earlier removal proceedings due to lack of notice could have the resulting removal order reinstated against her without ever being afforded an opportunity to challenge its legality.

In *Morales-Izquierdo*, we interpreted §§ 1231(a)(5) and 1229a(b)(5)(C)(ii) to avoid this constitutional dilemma. *See Clark v. Martinez*, 543 U.S. 371, 380–81 (2005). In that case, the petitioner challenged the constitutionality of the reinstatement procedure authorized under 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8, arguing, among other things, that he had not received adequate notice of the hearing

at which his original removal order had been entered *in absentia*, and that allowing immigration officers rather than judges to resolve that issue would violate due process. We held that the petitioner suffered no prejudice by being denied access to an immigration judge in the reinstatement proceeding because he would not have been able to litigate issues concerning lack of notice in that proceeding anyway. Citing § 1231(a)(5), we noted that "the reinstatement statute specifically precludes Morales from seeking to reopen the previous removal order based on defective service or any other grounds." 486 F.3d at 496. But in a footnote immediately following that statement, we said:

> The [Immigration and Nationality Act] does have a procedure an alien may use to reopen an in absentia removal order based on a claim of lack of notice, *see* INA § 240(b)(5)(C)(ii), 8 U.S.C. § 1229a(b)(5)(C)(ii), but Morales has failed to avail himself of it.

*Id.* at 496 n.13. We referred to § 1229a(b)(5)(C)(ii) again later in the opinion, when we explicitly held that reinstating a removal order under § 1231(a)(5) "creates no new obstacles to attacking the validity of the removal order," and cited as one example of an avenue of attack that remains open "8 U.S.C. § 1229a(b)(5)(C)(ii) (allowing reopening of a removal order based on lack of notice)." 486 F.3d at 498. As these references to § 1229a(b)(5)(C)(ii) make clear, in *Morales-Izquierdo* we construed § 1231(a)(5) as preserving a non-citizen's right to file a motion to reopen under § 1229a(b)(5)(C)(ii).

Thus, an individual placed in reinstatement proceedings under § 1231(a)(5) cannot as a general rule challenge the

validity of the prior removal order in the reinstatement proceeding itself.[4] But she retains the right, conferred by § 1229a(b)(5)(C)(ii), to seek rescission of a removal order entered *in absentia*, based on lack of notice, by filing a motion to reopen "at any time." *See Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam).

Miller properly invoked § 1229a(b)(5)(C)(ii) as a basis for seeking rescission of her May 2004 removal order. She contends that she never received notice of the May 2004 removal hearing, and that the removal order entered against her *in absentia* is therefore invalid. If she prevails on that contention, § 1229a(b)(5)(C)(ii) authorizes the relief she requests. However, we do not reach any arguments concerning whether Miller in fact lacked notice of her removal hearing. Those arguments should be addressed by the agency in the first instance.

The BIA erred by holding that § 1231(a)(5) deprived the immigration court of jurisdiction to resolve Miller's motion to reopen. We grant Miller's petition for review and remand the case so that the agency can decide Miller's motion to reopen on the merits.

**PETITION FOR REVIEW GRANTED; CASE REMANDED.**

---

[4] An exception exists for cases involving a "gross miscarriage of justice." *Garcia de Rincon v. Department of Homeland Security*, 539 F.3d 1133, 1138 (9th Cir. 2008).