# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60515

JOSE LUIS RODRIGUEZ-SARAGOSA,

Petitioner

v.

JEFFERSON B. SESSIONS, III, U.S. ATTORNEY GENERAL,

Respondent

United States Court of Appeals
Fifth Circuit

**FILED**

September 14, 2018

Lyle W. Cayce
Clerk

Petition for Review of an Order of the
Board of Immigration Appeals

Before DAVIS, JONES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Jose Luis Rodriguez-Saragosa's application for cancellation of removal was denied for reasons that have since become legally infirm. But rather than challenge his removal from abroad, Rodriguez-Saragosa reentered the country illegally. More than a decade later, immigration authorities re-apprehended him, and he moved the Board of Immigration Appeals (BIA) to reopen his original removal proceedings.

The difficulty, however, is 8 U.S.C. § 1231(a)(5), which provides: "If the [Secretary of Homeland Security] finds that an alien has reentered the United States illegally after having been removed," the prior order of removal "is not subject to being reopened." Because Rodriguez-Saragosa concedes that such a

No. 16-60515

finding was made in his case, his original order of removal (and the proceedings of which it was a part) are "not subject to being reopened." The BIA was thus correct to deny his motion to reopen. We deny his petition for review.

I

In 1999, an immigration judge found Rodriguez-Saragosa unlawfully present in the United States and ordered him removed to Mexico. *See* 8 U.S.C. § 1182(a)(6)(A)(i). The immigration judge also denied Rodriguez-Saragosa's application for the discretionary form of relief known as cancellation of removal. Specifically, the immigration judge held that Rodriguez-Saragosa's 1989 conviction for Unauthorized Use of a Motor Vehicle in violation of Texas Penal Code section 31.07 constituted a conviction for a "crime of violence" within the meaning of 18 U.S.C. § 16(b), rendering Rodriguez-Saragosa statutorily ineligible for relief. *See* 8 U.S.C. § 1229b(b)(1)(C); *see also* §§ 1227(a)(2)(A)(iii); 1101(a)(43)(F); *United States v. Galvan-Rodriguez*, 169 F.3d 217, 220 (5th Cir. 1999). The BIA affirmed that decision in April 2002, and the removal order became final. Rodriguez-Saragosa was removed to Mexico shortly thereafter.

Nonetheless, Rodriguez-Saragosa unlawfully reentered the country in April 2003. He resumed living with his family in Austin, Texas until October 2015, when he pleaded guilty to driving while intoxicated. At that point, Rodriguez-Saragosa came to the attention of the Department of Homeland Security (DHS), whose agents arrested him and charged him with unlawful reentry. *See* 8 U.S.C. § 1326(a). According to Rodriguez-Saragosa's filings in our court, DHS also used this opportunity to reinstate his 2002 removal order (although the administrative record omits the official notice of that action).

While in federal custody in January 2016, Rodriguez-Saragosa met with his present counsel, who informed him for the first time that his 1989 conviction no longer qualified as a conviction for a § 16(b) "crime of violence" under our court's decision in *United States v. Armendariz-Moreno*, 571 F.3d 490, 491

2

No. 16-60515

(5th Cir. 2009) (deeming *Galvan-Rodriguez* overruled). Then, in February 2016, a panel of this court held that *no* offense qualifies as a "crime of violence" under § 16(b) because that provision is unconstitutionally vague. *See United States v. Gonzalez-Longoria*, 813 F.3d 225, 227 (5th Cir. 2016), *rev'd on reh'g en banc*, 831 F.3d 670 (5th Cir. Aug. 5, 2016), *but core holding re-instated by Sessions v. Dimaya*, 138 S. Ct. 1204, 1210 (2018).

Thus, in April 2016, Rodriguez-Saragosa filed with the BIA a motion to reopen his original 2002 removal order so he could re-apply for cancellation of removal. Acknowledging that his motion was almost fourteen years untimely, *see* 8 U.S.C. § 1229a(c)(7)(A), Rodriguez-Saragosa asked that the statutory deadline be equitably tolled in light of the changes to the law in *Armendariz-Moreno* and the panel disposition of *Gonzalez-Longoria*, and in light of other humanitarian concerns. In the alternative, Rodriguez-Saragosa argued that those same factors justified the BIA's use of its own discretionary authority to reopen removal proceedings *sua sponte*. *See* 8 C.F.R. § 1003.2(a).

The BIA denied the motion. It issued a single-judge order rejecting Rodriguez-Saragosa's requests on the grounds that (1) the motion was untimely under the terms of the statute; (2) the panel disposition of *Gonzalez-Longoria* had been vacated by the grant of en banc rehearing, *see* 815 F.3d 189 (5th Cir. Feb. 26, 2016); and (3) "the record indicates" that Rodriguez-Saragosa's 2002 removal order "may have been reinstated by DHS" and "therefore is not subject to reopening" due to the restrictions in 8 U.S.C. § 1231(a)(5). The BIA also determined that the post-departure bar regulations "further support[ed] a denial of *sua sponte* reopening." *See* 8 C.F.R. § 1003.2(d).

Rodriguez-Saragosa petitioned our court for review.

3

No. 16-60515

II

This case centers on the unique procedures that come into play when an alien who has been ordered removed reenters the country illegally. Those procedures are codified at 8 U.S.C. § 1231(a)(5):

> If the [Secretary of Homeland Security] finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

Thus, once an appropriate DHS officer determines that an alien has reentered the country illegally, the alien's original order of removal "is reinstated," and the alien is subject to removal under the terms of the *original* removal order. § 1231(a)(5); *see* 8 C.F.R. § 1241.8(a), (c). The determination by DHS that § 1231(a)(5)'s prerequisites have been met is referred to as a "reinstatement order," and it is a valid subject of a petition for review in a federal court of appeals. *See* 8 U.S.C. § 1252(a)(1); *Martinez v. Johnson*, 740 F.3d 1040, 1043 n.4 (5th Cir. 2014); *Anderson v. Napolitano*, 611 F.3d 275, 277–78 (5th Cir. 2010); *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002).

But Rodriguez-Saragosa is not petitioning for review of his reinstatement order. Instead, he moved the BIA to reopen his *original* removal proceedings. Each alien who has been ordered removed has the statutory right to file one such motion, 8 U.S.C. § 1229a(c)(7)(A), *Mata v. Lynch*, 135 S. Ct. 2150, 2153 (2015), and, although the motion must generally be filed within 90 days of the final order of removal, *see* § 1229a(c)(7)(C)(i), that deadline "is subject to equitable tolling," *Lugo-Resendez v. Lynch*, 831 F.3d 337, 344 (5th Cir. 2016).

No. 16-60515

In addition, separate regulations authorize the BIA to reopen removal proceedings *sua sponte* at any time. *See* 8 C.F.R. § 1003.2(a). As with reinstatement orders, any decision of the BIA "refusing to reopen or reconsider" an order of removal is a valid subject for a petition for review. *See* § 1252(a)(1); *Mata*, 135 S. Ct. at 2154. That is the route to our court Rodriguez-Saragosa attempts here.[1]

A

With respect to Rodriguez-Saragosa's statutory motion to reopen, the BIA rejected his request for equitable tolling on three independent grounds. Two of those grounds are invalid under current law.[2] But the third remains apt: Because "the record indicates" (and Rodriguez-Saragosa admits) that the

---

[1] The Government has made a threshold challenge to our subject-matter jurisdiction that relies on a since-withdrawn opinion of our court, *see Mejia v. Sessions*, 881 F.3d 421 (5th Cir.), *withdrawn by unpublished order*, 16-60179 (5th Cir. June 20, 2018), and would implicate only challenges to reinstatement orders, whereas here we are reviewing a denial of a motion to reopen. Motions to reopen are not "collateral"; they are attempts to revisit an order made within the *same* matter, akin to an appeal or motion for reconsideration, and "[f]ederal-court review of administrative decisions denying motions to reopen removal proceedings dates back to at least 1916." *Kucana v. Holder*, 558 U.S. 233, 242 (2010). Notably, Congress has ensured that statutory motions to reopen are limited to one per alien, *see* 8 U.S.C. § 1229a(c)(7), and the BIA's decision to reopen proceedings *sua sponte* (or not) is left to the BIA's discretion, *see, e.g.*, *Hernandez-Castillo v. Sessions*, 875 F.3d 199, 206 (5th Cir. 2017).

[2] First, the BIA denied the request for equitable tolling because Rodriguez-Saragosa did not fall within any of the statutory exceptions to the 90-day filing requirement. But, as the Government agrees, that approach is tantamount to rejecting equitable tolling *in toto* and therefore constitutes legal error. *See Lugo-Resendez*, 831 F.3d at 343–44 (holding that the statutory deadline "is subject to equitable tolling" and that it was error to "treat[] compliance with the [statutory] deadline as conclusive"). Second, the BIA deemed one of Rodriguez-Saragosa's change-of-law arguments immaterial because the case on which he relied—the panel disposition of *United States v. Gonzalez-Longoria*, 813 F.3d at 227—had been vacated by en banc order. But because the Supreme Court has now reaffirmed the *Gonzalez-Longoria* panel's essential holding, *see Dimaya*, 138 S. Ct. at 1210, the BIA's reasoning is unpersuasive. Finally, although Rodriguez-Saragosa argues that the BIA abused its discretion by ignoring his change-of-law argument based on our 2009 decision in *Armendariz-Moreno*, 571 F.3d at 491, our disposition of the § 1231(a)(5) issue below renders that issue moot.

No. 16-60515

2002 order of removal was reinstated pursuant to § 1231(a)(5), the BIA determined that the 2002 removal proceedings are "not subject to reopening."[3] No amount of equitable tolling, the BIA thought, could change that.

We review the BIA's interpretation of § 1231(a)(5) de novo, *Diaz v. Sessions*, 894 F.3d 222, 227 (5th Cir. 2018), and agree that § 1231(a)(5) deprived the BIA of authority to reopen Rodriguez-Saragosa's 2002 removal proceedings. Congress enacted § 1231(a)(5) "to expedite re-removal of a person who returns without permission after being removed," *Tapia-Lemos v. Holder*, 696 F.3d 687, 690 (7th Cir. 2012), and to "invest [the re-removal procedures] with something closer to finality," *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 40 (2006); *accord Ojeda-Terrazas*, 290 F.3d at 295–96. That clear Congressional purpose is reflected in unambiguous text: "If the [Secretary of Homeland Security] finds that an alien has reentered the United States illegally after having been removed, . . . the prior order of removal . . . is not subject to being reopened." § 1231(a)(5). This language operates as a "mandatory directive" to the BIA, preventing it from granting the relief Rodriguez-Saragosa sought. *Cor-*

---

[3] Because Rodriguez-Saragosa admits in his petition for review that his 2002 order of removal was reinstated under § 1231(a)(5), it is immaterial that the administrative record does not include a copy of the official DHS "Notice of Intent/Decision to Reinstate Prior Order" that was required by 8 C.F.R. § 1241.8(b). Nor does Rodriguez-Saragosa argue that the BIA lacked a basis for concluding that the 2002 removal order had in fact been reinstated. To the contrary, the record contains a copy of the November 2015 indictment charging Rodriguez-Saragosa with having reentered the United States without DHS's permission, thus all but guaranteeing that § 1231(a)(5)'s triggering condition was met. *See* § 1231(a)(5) (providing that a prior removal order "is reinstated" "[i]f [DHS] finds that an alien has reentered the United States illegally after having been removed"). Indeed, Rodriguez-Saragosa's petition for review challenges the BIA's § 1231(a)(5) determination only by disputing the BIA's interpretation of the statute. The Government's motion to take judicial notice of the official "Notice of Intent/Decision to Reinstate Prior Order" regarding Rodriguez-Saragosa's 2002 removal order is accordingly denied as unnecessary.

No. 16-60515

*dova-Soto v. Holder*, 732 F.3d 789, 795 (7th Cir. 2013) (applying identical interpretation of § 1231(a)(5)); *see also de Castro v. Sessions*, 690 F. App'x 875, 876 (5th Cir. 2017) (same).[4]

Although Rodriguez-Saragosa responds that we have "created a conflict" between 8 U.S.C. § 1229a(c)(7)(A) and § 1231(a)(5), we detect no inconsistency. The former "provides that every alien ordered removed from the United States has a right to file one motion to reopen his or her removal proceedings." *Dada v. Mukasey*, 554 U.S. 1, 4–5 (2008). And the latter provides that an alien *forfeits* that right by reentering the country illegally. That is the clear import of the statute's unambiguous text. As the Seventh Circuit has explained, "Congress made a reasonable and understandable choice to provide that an alien who is removed . . . should not be able to engage in unlawful self-help by simply sneaking back into the country." *Cordova-Soto*, 732 F.3d at 795. Section 1231(a)(5) would have posed no bar to Rodriguez-Saragosa's motion to reopen had he filed that motion without reentering illegally.

Rodriguez-Saragosa also points to *Miller v. Sessions*, 889 F.3d 998, 1002–03 (9th Cir. 2018), in which the Ninth Circuit construed § 1231(a)(5) to allow the BIA to consider an alien's motion to reopen a removal order that had been entered *in absentia*. The court based its decision on (1) the "potential due process concerns" that arise where an alien first learns of a removal order against her after that order has already been reinstated, and on (2) the existence of a specific statutory provision authorizing an alien who did not receive notice of an *in absentia* removal order to file a motion to reopen independently of the

---

[4] By contrast, § 1231(a)(5)'s directive that "the prior order of removal . . . is not subject to being . . . *reviewed*" operates as a jurisdiction-stripping provision applicable to federal courts, and is therefore tempered by the REAL ID Act's savings provision for constitutional claims or questions of law. *See* 8 U.S.C. § 1252(a)(2)(D); *Martinez*, 740 F.3d at 1042; *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513–14 (5th Cir. 2006). Rodriguez-Saragosa has not pointed to any similar exception that might apply to § 1231(a)(5)'s directives to the BIA.

general    motion-to-reopen    statute. *Id.*    (referring    to    8    U.S.C. § 1229a(b)(5)(C)(ii)). We need not decide today whether we would construe § 1231(a)(5) similarly under similar circumstances. Rodriguez-Saragosa points to no specific statutory provision authorizing his motion to reopen (other than the general statutory authorization in § 1229a(c)(7)(A)), and he identifies no constitutional concerns attendant to his situation. To the contrary, Rodriguez-Saragosa's situation is precisely that which § 1231(a)(5) is designed to cover: where a removed alien reenters the United States illegally with full knowledge that he had been ordered removed. In such circumstances, "the prior order of removal . . . is not subject to being reopened."

Because the BIA correctly determined that § 1231(a)(5) rendered futile Rodriguez-Saragosa's motion to reopen, the BIA did not abuse its discretion in declining to apply equitable tolling to the statutory filing deadline.

B

With respect to Rodriguez-Saragosa's request that the BIA reopen his 2002 removal proceedings using its *sua sponte* authority, the BIA reached a similar conclusion: it determined that it could not exercise that authority because of § 1231(a)(5). For the reasons just discussed, this conclusion was correct. Under § 1231(a)(5), Rodriguez-Saragosa's 2002 removal proceedings are "not subject to being reopened," and the regulation giving the BIA's *sua sponte* reopening authority cannot override that command.[5]

We disagree with the Government that this aspect of the BIA's ruling lies outside our jurisdiction. Although "we lack jurisdiction to review the BIA's

---

[5] The BIA also determined that it lacked authority to reopen the proceedings *sua sponte* for the "further" reason that doing so would be inconsistent with the regulatory post-departure bar. *See* 8 C.F.R. § 1003.2(d). Rodriguez-Saragosa's challenge to that determination is moot in light of the above.

decision to decline *sua sponte* reopening" because no meaningful standard exists against which to judge the BIA's exercise of discretion, *Hernandez-Castillo*, 875 F.3d at 206, we *do* have jurisdiction to review the BIA's determination that a legal barrier prevents it from exercising that discretion in the first place. In *Ovalles v. Holder*, 577 F.3d 288 (5th Cir. 2009), for example, the BIA determined that the post-departure bar regulation prevented it from reopening the petitioner's case *sua sponte*. *Id.* at 291. But rather than dismiss the petition for lack of jurisdiction, we evaluated the BIA's legal conclusion and determined that it was correct. *See id.* at 291–98, 300. The same principle operates here. We therefore have jurisdiction to deny Rodriguez-Saragosa's petition on the merits.

III

The petition for review is DENIED.