# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 16, 2019

Lyle W. Cayce
Clerk

No. 16-60179

JOSE SANTOS MEJIA, also known as Jose Santos Zavala-Mejia,

  Petitioner

v.

MATTHEW G. WHITAKER, ACTING U. S. ATTORNEY GENERAL,

  Respondent

Petition for Review of an Order of
the Board of Immigration Appeals

Before KING, DENNIS, and COSTA, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Jose Santos Mejia petitions for review of a decision of the Board of Immigration Appeals (BIA) denying his motion to reopen his removal proceedings so that he could apply for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We dismiss in part for lack of jurisdiction and deny in part.[1]

---

[1] We previously issued an opinion dismissing Mejia's claim of lack of notice as a ground for reopening his original removal proceedings for lack of jurisdiction. *See Mejia v. Sessions*, 881 F.3d 421 (5th Cir.), *withdrawn by unpublished order*, 16-60179 (5th Cir. June 20, 2018). This opinion supersedes our prior opinion.

No. 16-60179

## I

Mejia, a native and citizen of Honduras, entered the United States on August 30, 2004, without having been admitted or paroled after inspection by an immigration officer. Immigration authorities served Mejia in person with a Notice to Appear (NTA) in removal proceedings and subsequently released him. The NTA did not provide a date for Mejia's hearing. When a hearing date was later set, a notice of the hearing (NOH) was not sent to Mejia. In November 2004, an immigration judge (IJ) in Texas held an in absentia hearing, found Mejia subject to removal, and ordered him removed to Honduras. The removal order stated that Mejia did not receive a NOH because he failed to provide his address to the immigration court. In November 2010, immigration authorities apprehended Mejia, and he was removed to Honduras in December.

Mejia reentered the United States in May 2011. In June 2014, immigration authorities again apprehended Mejia, and the Department of Homeland Security reinstated his prior removal order. Mejia claims that he did not receive a copy of the reinstatement order until October 24, 2014. On the same day, Mejia filed a motion to reopen his prior removal proceedings to apply for asylum, withholding of removal, and protection under the CAT, which he claims he filed before he received notice of the reinstatement of his prior removal order. Mejia argued that his motion to reopen should be considered timely because he did not receive notice of his removal hearing and because, according to him, country conditions in Honduras had materially changed.

The IJ denied Mejia's motion. The IJ concluded that Mejia was not entitled to notice of the 2004 removal hearing because he failed to provide a valid address to the immigration court. The IJ further found that Mejia failed to show a material change in country conditions. Finally, the IJ determined

No. 16-60179

that Mejia was not eligible for sua sponte reopening by the immigration court. Mejia appealed to the BIA, and the BIA upheld the IJ's denial of reopening for essentially the same reasons the IJ provided. Mejia now petitions this court for review of the BIA's decision.

## II

Mejia challenges the BIA's denial of his motion to reopen. Generally, the Immigration and Naturalization Act (INA) allows a party to file one motion to reopen deportation proceedings no later than ninety days after the date on which the final administrative decision was entered in the proceedings. *See* 8 U.S.C. § 1229a(c)(7)(A), (D)(i). Here, Mejia filed his motion to reopen in 2014, approximately ten years after the immigration court issued his prior removal order in 2004. His motion to reopen therefore exceeded the ninety-day statutory deadline.

There are a number of exceptions to the statutory deadline, under which an otherwise untimely motion to reopen may be granted. Three such exceptions are relevant here. First, an individual's motion to reopen on the basis that he did not receive proper notice of his initial removal proceeding can be filed at any time. *See id.* § 1229a(b)(5)(C)(ii). Second, there is no time limit for a motion to reopen if it is made for purposes of applying for asylum or withholding of removal "based on changed country conditions arising in the country of nationality, if such evidence is material" and could not have been presented at the previous proceeding. *Id.* § 1229a(c)(7)(C)(ii). Finally, the BIA may reopen removal proceedings at any time on its own motion. *See Mata v. Lynch*, 135 S. Ct. 2150, 2153 (2015) (citing 8 C.F.R § 1003.2(a)). Mejia argues that the BIA should have granted reopening on all three grounds. We address each of these grounds in turn.

No. 16-60179

## A

First, Mejia argues that the BIA abused its discretion in denying his motion to reopen because, he asserts, he was improperly denied notice of the hearing in his original removal proceedings. *See* 8 U.S.C. § 1229a(b)(5)(C)(ii). He challenges the BIA's finding that he did not provide his address to the immigration court and the BIA's conclusion that he was therefore not entitled to notice.

We must first determine whether we have jurisdiction to review the BIA's denial of Mejia's motion to reopen despite Mejia's lack-of-notice argument. We examine our jurisdiction on our own motion when necessary. *Green Tree Servicing, L.L.C. v. Charles*, 872 F.3d 637, 639 (5th Cir. 2017) (citing *Hill v. City of Seven Points*, 230 F.3d 167, 169 (5th Cir. 2000)). Generally, our jurisdiction to review final orders of removal, under § 1252(a)(1), "encompasses review of decisions refusing to reopen or reconsider such orders." *Mata*, 135 S. Ct. at 2154; § 1252(b)(6). However, two potential barriers to our jurisdiction exist here: (1) the statutory prohibition on review of removal orders after their later reinstatement contained in § 1231(a)(5); and (2) our circuit's requirement that a petitioner show a gross miscarriage of justice to succeed on a collateral attack on a removal order.

Section 1231(a)(5) provides that, "If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . , the prior order of removal is reinstated from its original date." 8 U.S.C. § 1231(a)(5). In *Rodriguez-Saragosa v. Sessions*, 904 F.3d 349 (5th Cir. 2018), we left open the question whether a motion to reopen may be brought despite this provision where the basis for reopening is lack of notice of an in absentia removal order. 904 F.3d at 355. As we noted in *Rodriguez-Saragosa*, "the Ninth Circuit construed § 1231(a)(5) to allow the BIA to consider an alien's motion to reopen a removal order that had been entered *in absentia*," because

4

of "'due process concerns' that arise where an alien first learns of a removal order against her after that order has already been reinstated, and" because there exists "a specific statutory provision authorizing an alien who did not receive notice of an *in absentia* removal order to file a motion to reopen independently of the general motion-to-reopen statute." *Id.* (citing *Miller v. Sessions*, 889 F.3d 998, 1002–03 (9th Cir. 2018)). Furthermore, as we acknowledged in *Rodriguez-Saragosa*, § 1231(a)(5)'s effect of stripping appellate jurisdiction is subject to the INA's "savings provision for constitutional claims or questions of law." 904 F.3d at 354; *see* § 1252(a)(2)(D) (carving out from any provision "[that] limits or eliminates judicial review . . . review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals"). Although Mejia necessarily knew of his prior removal order because he had previously been removed, the in absentia removal order he challenged through his motion to reopen nonetheless implicates due process and legal questions, because he contends that the prior order is invalid for lack of notice. Therefore, we have jurisdiction and may review the BIA's denial of Mejia's motion to reopen based on lack of notice under § 1252(a)(2)(D).

Additionally, Mejia is not required to show a gross miscarriage of justice to trigger jurisdiction. Under this court's precedent, we lack jurisdiction to consider a collateral attack on an underlying order of removal unless the petitioner demonstrates that he has exhausted administrative remedies and that the initial removal proceedings constituted a "gross miscarriage of justice." *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 514 (5th Cir. 2006). However, as the government concedes, we recognized in *Rodriguez-Saragosa* that "[m]otions to reopen are not 'collateral'; they are attempts to revisit an order made within the *same* matter, akin to an appeal or motion for reconsideration." *Rodriguez-Saragosa*, 904 F.3d at 353 n.1. Therefore, Mejia

is not required to show extraordinary circumstances for us to have jurisdiction over his petition for review, and instead we may proceed to review the merits of "the justifications expressed by the agency at the time of its ruling." *Budhathoki v. Nielsen*, 898 F.3d 504, 515 (5th Cir. 2018).

We review the denial of a motion to reopen under a "highly deferential abuse-of-discretion standard . . . ." *Gomez–Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009). "[We] must affirm the BIA's decision as long as it is not capricious, without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Id.* "[T]his court may not overturn the BIA's factual findings unless the evidence compels a contrary conclusion." *Id.* We review only the order of the BIA unless, as here, the IJ's decision "has some impact on the BIA's decision," *Mikhael v. I.N.S.*, 115 F.3d 299, 302 (5th Cir. 1997), in which case we review both, *see Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009).

A NTA or notice of a change in time or place of removal proceedings should be personally served, but may be mailed when personal service is not feasible. *See* 8 U.S.C. § 1229(a)(1) and (2). Failure to appear at a removal proceeding results in issuance of a removal order in absentia if the Government shows removability "by clear, unequivocal, and convincing evidence" and receipt of written notice under § 1229(a)(1) or (2). 8 U.S.C. § 1229a(b)(5)(A). However, written notice is not required if the individual subject to such proceedings fails to provide an address as required by § 1229(a)(1)(F). *See id.* § 1229a(b)(5)(A)-(B). An in absentia removal order may be rescinded upon a motion to reopen filed at any time if the individual subject to removal shows he did not receive notice in accordance with § 1229(a)(1) or (2). *See id.* § 1229a(b)(5)(C)(ii).

The BIA found that, under § 1229(a)(1)(F) and § 1229a(b)(5)(B), Mejia bore the obligation to inform the immigration court of his correct address.

No. 16-60179

Because he did not do so, the BIA determined he was not entitled to notice of the hearing before he was removed in absentia.

Mejia contends that the evidence reflects that he notified ICE officers that he was going to live with his mother, and that the officers confirmed the correct address of his mother. As the BIA noted, however, the evidence in the record is equivocal regarding the information Mejia provided to immigration authorities upon his release in 2004. The record shows that agents released Mejia due to lack of detention funds. He told them that he was en route to his mother's house but provided no address, only a phone number. When agents called Mejia's mother, she provided an address that conflicted with the address they found in the public records. The evidence does not indicate whether agents confirmed which was the correct address or what, if anything, they did with the information. Moreover, as the BIA found, the NTA informed Mejia in writing of his obligation to provide a current address to the immigration court. Contrary to Mejia's contention, the lack of clarity in the record does not require remand: an ambiguous record does not compel a conclusion contrary to the BIA's determination that Mejia was not entitled to reopening based on lack of notice.[2] *See Gomez–Palacios*, 560 F.3d at 358.

The BIA therefore acted within its discretion in declining to reopen Mejia's in absentia removal proceedings based on lack of notice. *See* 8 U.S.C. § 1229a(b)(5)(C)(ii).

---

[2] Mejia also avers that a federal regulation required ICE to communicate his address to the immigration court. Aside from the question of whether Mejia provided ICE an address in light of his mother's provision of an incorrect address, Mejia has failed to exhaust this argument by presenting it to the BIA, and this court thus lacks jurisdiction to address it. *See Omari v. Holder,* 562 F.3d 314, 318 (5th Cir. 2009).

7

No. 16-60179

## B

Mejia next contends that the BIA abused its discretion in denying his motion to reopen because, he claims, conditions in Honduras had materially changed. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii). "In determining whether there has been a material change in country conditions, the BIA compares 'the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below.'" *Zhenghao Liu v. Holder*, 457 F. App'x 446, 447 (5th Cir. 2012) (quoting *In re S-Y-G*, 24 I. & N. Dec. 247, 253 (BIA 2007)).

Here, the BIA agreed with the IJ that Mejia failed to show changed conditions in Honduras, concluding that Mejia's new evidence established only a "continuation of essentially the same conditions" of "gang violence, crime, and extortion" in Honduras. In his petition for review, Mejia contends that his evidence, in fact, shows a "steady increase in both gang-related violence and the Honduran government's inability or unwillingness to effectively deal with that violence."

We do not reach the merits of this claim, because we conclude we lack jurisdiction under 8 U.S.C. § 1231(a)(5). Mejia's claim that the BIA did not properly assess his evidence of changed country conditions in Honduras is a question of fact.[3] *See Zhu v. Gonzales*, 493 F.3d 588, 595–96 & n.31 (5th Cir. 2007) (this court lacks jurisdiction to review determinations based on assessment of facts and circumstances of a particular case, including in the context of changed conditions); *see also Lemus v. Lynch*, 611 F. App'x 813, 815

---

[3] Mejia's contention that the reinstatement order came after "the motion [to reopen] and does not preclude it," and that the Governent did not argue before the BIA that that § 1231(a)(5) applied to his motion, fail. Section 1231(a)(5) expressly provides that a prior order of removal is reinstated "from its original date" and "is not subject to being reopened." This language forecloses Mejia's argument that § 1231(a)(5)'s mandate does not apply to reopening proceeding that are pending at the time of the reinstatement. Moreover, Mejia's objection that the Government did not raise this issue before the BIA is irrelevant, as § 1231(a)(5)'s limitations are jurisdictional, *Martinez*, 740 F.3d at 1042.

8

(5th Cir. 2015) ("Whether the BIA improperly weighed or ignored evidence regarding changed-conditions in [the country of origin], or whether the evidence established changed country conditions, are questions of fact, and do not raise a constitutional or legal question."); *Beau-Soleil v. Holder*, 548 F. App'x 161, 162 (5th Cir. 2013) ("[W]hether conditions in a country have changed and the examination of those conditions present issues of fact outside of our jurisdiction."). Thus, we lack jurisdiction to consider it. *See* 8 U.S.C. § 1231(a)(5), § 1252(a)(2)(D); *Zhu*, 493 F.3d at 595–96.

## C

Finally, Mejia challenges the BIA's conclusion that he was not eligible for sua sponte reopening. *See* 8 C.F.R § 1003.2(a). As Mejia acknowledges, this court lacks jurisdiction to review the BIA's discretionary decision not to invoke its sua sponte authority to reopen a case because there is "no legal standard against which to judge" that decision. *Enriquez-Alvarado v. Ashcroft*, 371 F.3d 246, 250 (5th Cir. 2004). Mejia argues, however, that the BIA deprived him of due process by mischaracterizing the facts of the case and disregarding his claims. Because Mejia raises a constitutional claim, for which there is a governing legal standard, this court has jurisdiction to consider it. *Cf. id.* Mejia's contention that the BIA violated his due process rights is unavailing, however, as this court has held that no liberty interest exists in a motion to reopen, and therefore due process claims are not cognizable in the context of reopening proceedings. *See Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 550–51 (5th Cir. 2006).

## D

Mejia makes a number of other claims that cannot, on their own, support reopening. He asserts that the BIA ignored a statement by the IJ that his motion to reopen would be denied as a matter of discretion "even assuming changed country conditions," and he claims this statement was based on a legal

error.  Because, as previously explained, we lack jurisdiction to review the BIA's determination that Mejia has not established a material change in country conditions, we need not address this claim.

Next, Mejia argues that he has established his eligibility for asylum, withholding of removal, and protection under the CAT.  To the extent he maintains that meritorious claims of eligibility for relief independently entitle him to reopening beyond the statutory deadline, Mejia cites no authority and provides no explanation for this proposition.  Any such argument is therefore forfeited.  *See, e.g.*, *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017) (deeming a party's challenge forfeited for inadequate briefing).

Finally, Mejia contends that the BIA violated "established motion procedure" when it denied his motion to reopen because, he argues, he established prima facie eligibility for relief.  However, to the extent Mejia contends that a prima facie case for relief can serve as an exception to the ninety-day filing deadline for motions to reopen, he provides no support for this proposition.

### III

For the foregoing reasons, the petition is DISMISSED in part for lack of jurisdiction and DENIED in part.