# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 7, 2023

Lyle W. Cayce
Clerk

————————

No. 22-60501

————————

Bessy Ileana Garcia-Gonzalez;
Kevin Steven Soriano-Garcia,

*Petitioners*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

————————————————————

Petition for Review of an Order of
the Board of Immigration Appeals
Agency Nos. A209 226 195,
A209 226 196

————————————————————

Before Smith, Higginson, and Willett, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Bessy Garcia-Gonzalez and her son, Kevin,[1] entered the United States illegally after fleeing alleged gang violence in Honduras. They sought asylum and related relief but were denied; their appeal to the Board of Immigration Appeals ("BIA") was likewise dismissed. Garcia-Gonzalez then moved the

———————————

[1] Kevin is a rider, or derivative, respondent, so this opinion generally refers only to Bessy, henceforth "Garcia-Gonzalez."

No. 22-60501

BIA to reopen her and her son's removal proceedings.  The BIA denied her motion.

Garcia-Gonzalez petitions for review of that denial.  She also takes issue with the BIA's decision not to reopen her proceedings *sua sponte*. Underpinning her appeal is her claim that she was persecuted because of her membership in a "particular social group" ("PSG"), which can justify relief under our immigration laws.  Her purported PSG is the nuclear family of her son, who allegedly was recruited by Honduran gangs.

This circuit has not yet addressed in detail when family-based PSGs are cognizable, nor do we have precise guidance from the BIA or the Department of Justice.  Despite the lack of precision, we lack jurisdiction over the BIA's refusal to reopen Garcia-Gonzalez's proceedings *sua sponte*, and we otherwise reject her claims on the merits.  We therefore dismiss the petition in part and deny it in part.

I.

Garcia-Gonzalez, a native and citizen of Honduras, entered the United States in June 2016 without proper documentation.  She maintains that she fled Honduras with Kevin when gangs recruited Kevin and Garcia-Gonzalez's nephew.  That recruitment included kidnapping her nephew and repeatedly threatening to kill Kevin and Garcia-Gonzalez, among other acts of intimidation and violence directed at them and others in the community.

After she entered the United States, border agents almost immediately detained Garcia-Gonzalez.  She was ordered to appear before an immigration judge ("I.J.").  At the first hearing, she appeared *pro se*; the I.J. gave her time to retain an attorney.  She did so and was represented by Lisa Lazarte at the next hearing, where Garcia-Gonzalez conceded removability but stated that she was seeking asylum and related relief.  She claimed that she had been persecuted in Honduras because of her membership in a PSG, which over

the course of the proceedings she defined as Kevin's nuclear family.

At the next hearing, the I.J. told Garcia-Gonzalez (represented by Lazarte) that she would need to submit biometrics within six months as part of her asylum application.[2] Lazarte and Garcia-Gonzalez affirmed to the I.J. that they understood the biometrics requirement and the deadline.

Nevertheless, Garcia-Gonzalez missed the deadline, which Lazarte admitted at the next hearing. Lazarte, however, took full responsibility, stating that the blunder "was completely [her] fault." Lazarte also noted that Garcia-Gonzalez had asked her about the biometrics before the deadline. The I.J. still found the claims abandoned because of the lack of timely biometrics and ordered Garcia-Gonzalez removed to Honduras. He did, however, also suggest that Garcia-Gonzalez might have an ineffective-assistance-of-counsel ("IAC") claim.

Garcia-Gonzalez retained new counsel, Martha Garza, for her appeal. Garza told Garcia-Gonzalez that she would be willing to file an appeal with the BIA, but if Garcia-Gonzalez wanted to pursue a claim against Lazarte based on IAC, she would need to retain different counsel. Garcia-Gonzalez chose to appeal to the BIA.

On appeal, Garcia-Gonzalez asserted primarily that the I.J. had not given her adequate notice of the consequences of failing to provide her biometrics on time. The BIA affirmed the I.J.'s decision, finding that the I.J. had properly informed her of the biometrics requirement.

The BIA also noted that Garcia-Gonzalez did not allege IAC on appeal or provide evidence in accordance with *Matter of Lozada*, 19 I. & N. Dec. 637,

---

[2] *See* 8 C.F.R. § 1003.47(d).

No. 22-60501

639 (B.I.A. 1988). *Lozada* held that motions to reopen or reconsider[3] based on IAC require (i) the support of an affidavit detailing what the alien and the attorney agreed that the attorney would do (and any related representations to the alien by the attorney); (ii) that notice of the allegations be given to the attorney, who must have an opportunity to respond; and (iii) that the motion reflect whether a grievance against the attorney has been filed with the appropriate disciplinary authorities (or else an explanation of why a grievance has not been filed). *Id.*

After the BIA's denial, Garcia-Gonzalez retained a third attorney (also her current attorney): Raed Gonzalez. In late 2020, she moved the BIA to reopen her removal proceedings,[4] claiming that both former attorneys were ineffective. She alleged that she had met the *Lozada* requirements; she asserted in the alternative that the BIA should reopen her case *sua sponte* under 8 C.F.R. § 1003.2(a).

Almost two years later, the BIA denied her motion. It noted that an IAC claim requires not only compliance with *Lozada*'s evidentiary requirements but also a showing of substantial prejudice, i.e., a *prima facie* showing that the applicant would have been entitled to relief absent IAC. *See Lozada*, 19 I. & N. Dec. at 638. The BIA, assuming *arguendo* that Garcia-Gonzalez had satisfied the *Lozada* evidentiary requirements, nevertheless determined

---

[3] As a technical procedural point, *Lozada* contemplates that petitioners will bring IAC claims in a motion to reopen rather than on direct appeal. 19 I. & N. Dec. at 639. Some circuits have held that IAC claims may also be brought on direct appeal to the BIA and that the *Lozada* requirements apply equally to those. *See, e.g.*, *Ferreira v. Barr*, 939 F.3d 44, 46 (1st Cir. 2019); *Yang v. Gonzales*, 478 F.3d 133, 142 (2d Cir. 2007); *Correa-Rivera v. Holder*, 706 F.3d 1128, 1130–31 (9th Cir. 2013) (forgiving the petitioner's "procedural misstep" because "[a]ppeals asserting [IAC] claims ... are effectively motions to reopen").

[4] An alien may generally file one motion to reopen under 8 U.S.C. § 1229a(c)(7)(A).

4

that she had not made a *prima facie* showing on any of her claims.

Garcia-Gonzalez's asylum and withholding-of-removal claims, which were based on the gangs' alleged persecution of Kevin's nuclear family, failed because she had not presented any evidence that her son's nuclear family was a cognizable PSG for purposes of asylum or withholding of removal.[5] In particular, the BIA found that, while Kevin's nuclear family "may be distinct within [Garcia-Gonzalez's] community, she ha[d] not presented sufficient evidence to conclude that this group is perceived, considered, or recognized as a group, as a whole, by Honduran society." In other words, she did not show that Kevin's nuclear family was viewed "as separate from the rest of the society in question."

Next, the BIA determined that Garcia-Gonzalez did not make a *prima facie* showing that she was entitled to relief under the Convention Against Torture ("CAT"), because she did not provide evidence that she would be tortured or that the Honduran government would acquiesce in her torture.[6]

Finally, the BIA declined to reopen the removal proceedings *sua sponte*, because Garcia-Gonzalez's case was not an "exceptional situation" that would justify such relief.

## II.

We review the BIA's denial of a motion to reopen for abuse of discretion.[7] We uphold the BIA's decision unless it is "capricious, irrational, utterly without foundation in the evidence, based on legally erroneous

---

[5] *See* 8 U.S.C. §§ 1231(b)(3)(A), 1158(b)(1)(B)(i).

[6] *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1).

[7] *Ramos-Portillo v. Barr*, 919 F.3d 955, 958 (5th Cir. 2019) (citing *Penalva v. Sessions*, 884 F.3d 521, 523 (5th Cir. 2018), *abrogation on other grounds recognized by Flores-Moreno v. Barr*, 971 F.3d 541 (5th Cir. 2020)).

No. 22-60501

interpretations of statutes or regulations, or based on unexplained departures from regulations or established policies."[8]

We review the BIA's conclusions of law *de novo*, *Diaz v. Sessions*, 894 F.3d 222, 227 (5th Cir. 2018), and its factual findings for substantial evidence, *Barrios-Cantarero v. Holder*, 772 F.3d 1019, 1021 (5th Cir. 2014) (per curiam) (citing *Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007)).

III.

Garcia-Gonzalez raises three issues in her petition for review of the BIA's decision not to reopen:

*First*, whether the BIA erred in finding that Garcia-Gonzalez had not made a *prima facie* claim for asylum and withholding of removal under 8 U.S.C. §§ 1158 and 1231(b)(3). In particular, whether the BIA incorrectly held that she had failed to provide evidence that she belonged to a cognizable PSG. *Second*, whether the BIA erred in finding that Garcia-Gonzalez had not made a *prima facie* claim for relief under the CAT. The BIA concluded that she had neither claimed past torture nor presented evidence that she would be tortured by or with the acquiescence of the Honduran government. *Third*, whether the BIA erred in not reopening Garcia-Gonzalez's proceedings *sua sponte*.

A.

Garcia-Gonzalez's strongest argument is her first: The nuclear family of her son is a cognizable PSG in the context of withholding of removal and asylum. She correctly notes that alleged PSGs must be (i) characterized by an immutable trait[9]; (ii) definable with reasonable particularity; and (iii) soci-

---

[8] *Id.* (quoting *Penalva*, 884 F.3d at 523).

[9] Literal immutability is not required. The characteristic only "must be one that

6

No. 22-60501

ally distinct. *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014). She asserts that the PSG of her son's nuclear family satisfies all three elements.

The social-distinction requirement is the only one contested here. The BIA found that while families can sometimes be cognizable PSGs,[10] Garcia-Gonzalez had failed to prove that her son's nuclear family was "perceived, considered, or recognized as a group, as a whole, by Honduran society." *See Matter of W-G-R-*, 26 I. & N. Dec. 208, 216–17 (B.I.A. 2014)). Put another way, she did not adduce anything demonstrating that Honduran society "perceives or recognizes her proffered group as separate from the rest of the society in question." *See Gonzales-Veliz v. Barr*, 938 F.3d 219, 230–31 (5th Cir. 2019).

This circuit has not established clear guidelines for when family-based PSGs are cognizable, especially in the context of gang violence. We typically deny petitions in cases involving gang activity directed at a family on the basis that petitioners did not prove nexus. For example, petitioners may have established only personal, criminal, or economic motives for a gang's conduct, and conduct so motivated is not cognizable persecution.[11]

That avenue is not available here, however, because the BIA made its decision on the sole ground that Garcia-Gonzalez had not proved social distinction. *See Iruegas-Valdez v. Yates*, 846 F.3d 806, 811 (5th Cir. 2017) (noting that issues not addressed by the BIA are not properly before the

---

the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (B.I.A. 1985).

[10] *See Pena Oseguera v. Barr*, 936 F.3d 249, 250–51 (5th Cir. 2019).

[11] *See, e.g.*, *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 493 (5th Cir. 2015); *Iglesias-Bonilla v. Garland*, No. 21-60264, 2022 WL 102041, at *1 (5th Cir. Jan. 10, 2022) (unpublished) (per curiam).

reviewing court). We therefore must answer the question whether Garcia-Gonzalez adequately showed that her proposed PSG was socially distinct (and therefore cognizable).

The guidance we have from the BIA is minimal. In explaining social distinction, the BIA has clarified that "literal" visibility, i.e., physical indicators of membership in the group, is not required. *M-E-V-G-*, 26 I. & N. Dec. at 238. Instead, social distinction is present where "those with a common immutable characteristic are set apart, or distinct, from other persons within the society in some significant way." *Id.* "In other words, if the common immutable characteristic were known, those with the characteristic in the society in question would be meaningfully distinguished from those who do not have it." *Id.* The relevant viewpoint is that of the society as a whole, not that of the persecutors. *Id.* at 241–42.

Regarding family-based PSGs specifically, the BIA has consistently recognized that families can be PSGs in at least some circumstances. *See Matter of Acosta*, 19 I. & N. Dec. 211, 233 (B.I.A. 1985); *M-E-V-G-*, 26 I. & N. Dec. at 246.

Beyond that, however, the BIA has provided little guidance that remains operative. In 2017, the BIA published *Matter of L-E-A-* ("*L-E-A-I*"), in which it reiterated that family can be a cognizable PSG but also stated that "a claim based on family membership will depend on the nature and degree of the relationships involved and how those relationships are regarded by the society in question." 27 I. & N. Dec. 40, 43 (B.I.A. 2017). Accordingly, determining whether a family-based PSG is cognizable is a "fact-based inquiry made on a case-by-case basis." *Id.* at 42. Applying that reasoning, the BIA concluded that the applicant was a member of a PSG comprising his father's immediate family. *Id.* at 43.

But in 2019, the Department of Justice reversed course. The Attorney

General vacated the relevant portion of *L-E-A- I* and explained that most proposed family-based PSGs fail the distinction requirement, because the "fact that 'nuclear families' or some other widely recognized family unit generally car[ries] societal importance says nothing about whether a *specific* nuclear family would be 'recognizable by society at large.'" *Matter of L-E-A-* ("*L-E-A- II*"), 27 I. & N. Dec. 581, 594 (Att'y Gen. 2019) (quoting *Matter of A-B-*, 27 I. & N. Dec. 316, 336 (Att'y Gen. 2018)). The Attorney General also reasoned that the narrower construction was more consistent with congressional intent, given that Congress would have made the nuclear family an expressly protected ground if it had meant for it to be a cognizable PSG *per se*. *Id.* at 593.

With the advent of a new Administration, the Department of Justice changed its mind yet again. Explaining that *L-E-A- II* was inconsistent with the decisions of several courts of appeals, the Attorney General vacated *L-E-A- II*. *See Matter of L-E-A-* ("*L-E-A- III*"), 28 I. & N. Dec. 304, 304–05 (Att'y Gen. 2021). He did not, however, lay out a new standard. Instead, he stated that rulemaking was the proper procedure for "'complex' immigration-law question[s] of 'great importance.'" *Id.* at 305 (quoting *Matter of Compean*, 25 I. & N. Dec. 1, 2 (Att'y Gen. 2009)).

In the wake of the whiplash, we are left with *L-E-A- I* and its general case-by-case standard.

And, years later and contrary to indications by the Executive, we are still waiting for the government to issue the rule envisaged by *L-E-A- III*. On February 2, 2021, the President directed the Attorney General and the Secretary of Homeland Security to "promulgate joint regulations . . . addressing the circumstances in which a person should be considered a member of a 'particular social group.'" *See* Exec. Order No. 14,010, 86 Fed. Reg. 8267, 8271 (Feb. 2, 2021). The President set a deadline of 270 days. *Id.* That

deadline lapsed in late 2021—almost two years ago.  We do not have even a draft of the proposed rule.  *See, e.g.*, 88 Fed. Reg. 10966, 11054 (Feb. 22, 2023).

Despite the lack of executive guidance, and despite our being presented with an opportunity to clarify for this circuit the contours of cognizable family-based PSGs, the United States urges us to rule narrowly and deny Garcia-Gonzalez's petition on the ground that she did not present any evidence at all regarding the social distinction of her proposed PSG.  Thus, the Department of Justice issued guidance, vacated that guidance, was instructed to provide new guidance, failed to provide said guidance, and now asks us to refrain from providing any meaningful guidance ourselves.  Nevertheless, the United States is correct that we may dispose of this case on narrow grounds, and we do.  We therefore leave for another day the task of more precisely delineating the cognizability of family-based PSGs and the evidence needed to prove them.

An alien seeking asylum or withholding of removal has the burden to demonstrate eligibility.  *See* 8 U.S.C. §§ 1158(b)(1)(B)(i)–(ii), 1231(b)(3)(C); 8 C.F.R. §§ 208.13(a), 208.16(b).  Garcia-Gonzalez failed to satisfy her burden.  In her application, she did not proffer any evidence of the social distinction of her family in Honduran society or of the social saliency of the nuclear family unit in Honduran society generally.  *See W-G-R-*, 26 I. & N. Dec. at 216–17.  Even in her briefing before this court, Garcia-Gonzalez offers nothing more than the conclusory assertion that "family ties are a highly recognizable trait in" Honduras.

There is no *per se* rule that every family-based PSG is cognizable. Congress did not make persecution based on "family" a statutorily enumerated ground for asylum or withholding of removal.  *See* 8 U.S.C. §§ 1158(b)(1)(B)(i)–(ii), 1231(b)(3)(C).  The BIA instructs that the analysis

for family-based PSGs is case-by-case and depends "on the nature and degree of the relationships involved and how those relationships are regarded by the society in question." *L-E-A- I*, 27 I. & N. Dec. at 42–43. Applicants for asylum or withholding of removal may not merely propose a family-based PSG without evidence of society's perception of the family in question. To the extent that other circuits have appeared to suggest otherwise,[12] we respectfully disagree.

Garcia-Gonzalez therefore was required to put forward at least *some* evidence of the social distinction of her son's nuclear family in Honduran society. Because she did not, she failed to make out a *prima facie* case of eligibility for withholding of removal or asylum. The consequence is that she failed to demonstrate any prejudice caused by allegedly ineffective counsel. The BIA did not err in denying her motion to reopen proceedings on her withholding-of-removal and asylum claims.

B.

Garcia-Gonzalez next claims that the BIA erred in concluding that she had not made a *prima facie* claim for relief under the CAT. Specifically, she points to her Form I-589, on which she claimed that the Honduran police (i) would not help her; (ii) "have always been affiliated with gangs" and "would not protect people against the gangs"; and (iii) had been infiltrated by a gang (the gang was allegedly aware that her nephew had filed a police

---

[12] *See, e.g.*, *Gebremichael v. INS*, 10 F.3d 28, 36 (1st Cir. 1993) ("There can, in fact, be no plainer example of a social group based on common, identifiable and immutable characteristics than that of the nuclear family."); *Velasquez v. Sessions*, 866 F.3d 188, 194 (4th Cir. 2017) ("[A]n individual's membership in her nuclear family is a particular social group." (citing *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015))); *Rios v. Lynch*, 807 F.3d 1123, 1128 (9th Cir. 2015) ("[T]he family remains the quintessential particular social group." (citing *M-E-V-G-*, 26 I. & N. Dec. at 240)).

report).  Her reply brief also suggests that the BIA should have taken judicial notice of country conditions reports and similar materials, which would have corroborated her testimony.  *See* 8 C.F.R. § 1003.1(d)(3)(iv)(A)(1)–(3).

The CAT requires petitioners to show that it is "more likely than not" that they would be tortured if they were removed to their home country. *Id.* § 1208.16(c)(2); *Aviles-Tavera v. Garland*, 22 F.4th 478, 486 (5th Cir. 2022).  Moreover, such torture must be state action, i.e., "inflicted by, or at the instigation of, or with the consent or acquiescence of," a person "acting in an official capacity."  8 C.F.R. § 1208.18(a)(1).

Acquiescence, in turn, requires prior "awareness" or "willful blindness" of the torture and a "breach" of "legal responsibility to intervene to prevent" the torture.  *Id.* § 1208.18(a)(7).  Inability to intervene is not acquiescence; likewise, mere failure to prevent the torture is not necessarily acquiescence.  *Id.*  And a foreign state's "failure to apprehend the persons threatening the alien" or "the lack of financial resources to eradicate the threat or risk of torture" does not establish state action.  *Aviles-Tavera*, 22 F.4th at 486 (quoting *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 351 (5th Cir. 2006)).

Garcia-Gonzalez offers nothing more than her own conclusory statements and suppositions in support of her claim.  While she posits that the Honduran police are in cahoots with the gangs, she does not proffer any evidence that her local police would acquiesce in her torture.  To the contrary, as the government notes, she alleges that the police *did* respond when her brother was beaten, just not as vigorously or with as many officers as Garcia-Gonzalez would have liked.

The BIA did not err in finding that Garcia-Gonzalez had not "presented evidence demonstrating that she would be tortured or that the Honduran government would acquiesce" in that torture.  It thus did not err in concluding that she had not made a *prima facie* claim of relief under the CAT.

No. 22-60501

To the extent that Garcia-Gonzalez contends that the BIA should have taken administrative notice of certain public information, she has forfeited that argument by raising it for the first time in her reply brief. *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005). But even if she had not, her argument would still fail.

The BIA may indeed engage in limited factfinding through administrative notice, including notice of official documents and government sources and facts ascertainable therefrom. 8 C.F.R. § 1003.1(d)(3)(iv)(A). But it has merely the *power* to do so, not the *obligation*. *See id.* Garcia-Gonzalez does not cite any authority for her proposition that the BIA had an affirmative obligation—completely *sua sponte*—to consider documents or information external to the record.

Even if the BIA did have such an obligation, the information that Garcia-Gonzalez pulls from the 2020 State Department report on human rights in Honduras[13] does not establish state action. To the contrary, the report says on page 2 that the government has investigated and prosecuted numerous instances of gang-instigated violence, and on page 3 that gangs direct violence and intimidation toward government officials themselves.

## C.

Garcia-Gonzalez contends that the BIA committed "legal error" in declining to reopen her proceeding *sua sponte*. She concedes that Fifth Circuit precedent has consistently held that we lack jurisdiction over denials of *sua sponte* reopening, but she attempts to distinguish her petition by asserting that she is bringing a due process challenge—IAC—over which we do have

---

[13] U.S. Dep't of State, Bureau of Democracy, H.R. and Lab., Honduras 2020 Human Rights Report (2020), www.state.gov/wp-content/uploads/2021/03/HONDURAS-2020-HUMAN-RIGHTS-REPORT.pdf.

jurisdiction because it is a mixed question of law and fact.  Garcia-Gonzalez also urges us to deem our adverse precedent wrongly decided and to adopt the reasoning in *Chehazeh v. Attorney General of the United States*, 666 F.3d 118 (3d Cir. 2012).  Garcia-Gonzalez concludes that *sua sponte* reopening is required here because IAC rendered her case an "exceptional circumstance" that ended in a "gross miscarriage of justice."

The Immigration and Nationality Act generally allows aliens to file one motion to reopen.  8 U.S.C. § 1229a(c)(7)(A).  But the BIA's regulations also allow the BIA to reopen proceedings *sua sponte*.  8 C.F.R. § 1003.2(a).  That decision is discretionary:  Although the BIA "may" reopen proceedings, that is never required.  *Id.*; *see also Djie v. Garland*, 39 F.4th 280, 288 (5th Cir. 2022).

Given the entirely discretionary nature of *sua sponte* reopening, this court has repeatedly held that circuit courts lack jurisdiction over denials by the BIA to reopen proceedings *sua sponte*. The rationale is that the regulations provide federal courts with "no legal standard against which to judge" the BIA's decision.[14]

Garcia-Gonzalez's invocation of Supreme Court cases[15] is unavailing. They all predate *Eneugwu* (and *Mejia* and *Hernandez-Castillo*, to boot), so the rule of orderliness forecloses her argument.[16]  Moreover, *Eneugwu* consid-

---

[14] *Eneugwu v. Garland*, 54 F.4th 315, 320 (5th Cir. 2022) (quoting *Mejia v. Whitaker*, 913 F.3d 482, 490 (5th Cir. 2019)); *see also Mejia*, 913 F.3d at 490; *Hernandez-Castillo v. Sessions*, 875 F.3d 199, 206 (5th Cir. 2017); *Enriquez-Alvarado v. Ashcroft*, 371 F.3d 246, 250 (5th Cir. 2004).

[15] *Mata v. Lynch*, 576 U.S. 143 (2015); *Kucana v. Holder*, 558 U.S. 233 (2010); *Dada v. Mukasey*, 554 U.S. 1 (2008); *Heckler v. Chaney*, 470 U.S. 821 (1985).

[16] "Under our rule of orderliness, 'one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court.'"  *Mercado v. Lynch*, 823 F.3d 276, 279

ered the Supreme Court cases that Garcia-Gonzalez cites and concluded that they did "not undermine our holdings that we do not have jurisdiction to review refusals to reopen *sua sponte*."[17]

Turning to Garcia-Gonzalez's due process claim, it is difficult to discern her precise argument. Generously assuming that she is alleging a due process violation in the reopening proceedings themselves, her claim still fails. Assuming jurisdiction exists over a constitutional claim related to her motion, "there is no liberty interest at stake in a motion to reopen," given its entirely discretionary nature. *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 551 (5th Cir. 2006); *see also Mejia*, 913 F.3d at 490 (citing *Altamirano-Lopez*, 435 F.3d at 550–51). Thus, even if Garcia-Gonzalez were eligible for discretionary relief, "the denial of discretionary relief does not rise to the level of a constitutional violation." *Finlay v. INS*, 210 F.3d 556, 557 (5th Cir. 2000).

To the extent Garcia-Gonzalez is asserting a deprivation of due process in the underlying removal proceedings, and assuming that she can bring that claim through the current petition rather than through one for review of the underlying order, she still would not prevail. Attempting to raise a due process claim through an argument about the BIA's failure to reopen *sua sponte* does not bring the claim within our jurisdiction.

Essentially the same posture was present in *Diaz*, which held that we

---

(5th Cir. 2016) (quoting *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)). The rule of orderliness precludes Garcia-Gonzalez's request that we adopt the Third Circuit's standard for assessing denials of *sua sponte* reopening as well as her extended discussion of why her case is an "exceptional situation" that resulted in a "gross miscarriage of justice."

[17] 54 F.4th at 320 ("The two most recent of the cited Supreme Court opinions expressly declined to reject the position of this court and of other circuits that refusal to reopen *sua sponte* is not reviewable." (first citing *Mata*, 576 U.S. at 143; and then citing *Kucana*, 558 U.S. at 251 n.18)).

No. 22-60501

still lack jurisdiction over the BIA's decision not to reopen *sua sponte*. 894 F.3d at 228. The court noted, "The thrust of Diaz's petition is that . . . he was denied due process because his counsel was ineffective as to the application for cancellation of removal. Yet Diaz does not petition for review of the application for cancellation of removal; instead, he petitions for review of his motion to reopen." *Id.* at 226. That did not change the fact that we lacked jurisdiction over the BIA's decision not to reopen its proceedings *sua sponte*. *Id.* at 228.

The petition for review of the BIA's denial of the motion to reopen is DISMISSED in part for want of jurisdiction and DENIED in part.